The next case is number 13-1405, Class A Immunotherapies, Incorporated, against Somaxone Pharmaceuticals, Vistacito. Let's move the court commission. Can I put up my demonstrative? If you can find a place to put it where we can see what you're showing us. You may have to move that back, at least if you're going to point to anything below halfway. I think it's cut off by the bench. I can't see. Yeah, I can't see it. I think perhaps put it behind the council table. Or perhaps behind the podium. Does that help? Oh, wow, that's high enough. And I also submitted this to the court, and I have copies. If the justices want copies. I have enough on regular paper. That would help. Give it to the bailiff, please. And I think your friends may need some copies. Sure, we'll have some. Okay, please proceed. Good morning, Your Honors. I'm Mr. Zito. I'm here representing the Plaintiff Class of Immunotherapies, the appellant in this case. I'd like to start off by saying that the patents in suit, the two patent, class and patents in suit, don't teach how to do a clinical study. They don't talk about clinical studies. They don't relate to doing a clinical study. So there really is nothing in these patents to be excluded by 271E1. And now that confusion is pervasive in the district court and the district court's discussions. But if you read the patent claims, and I'm looking at page 39 of the appendix, claim one, for example, of the 639. It says, accessing at least one adverse event data source that stores adverse event data. It doesn't say generate adverse event data, generate an adverse event database. That's what's done all the way on the left-hand side of the chart in clinical studies. So the clinical study is done and over by the time this patent starts. If you look at the bottom of the chart, this is where the class claims come in. But the adverse event data source is the information that was submitted to the PTF, right? The adverse event information. I mean, to the FDA. Correct. The adverse event information has already been generated and submitted to the FDA. So this is not a patent about doing something to submit something to some organization. This is a patent about after that activity has occurred, activity all the way over on the left. There is. Can I try to see if I understand your argument? Is it that to the extent that the lower court or they may have argued or the lower court may have been under the belief that the analyzing step was performed before the patent issued? You're saying that's not true. It's performed the minute you look at the database. And so it could be done even today. Is that your argument? You're going to the 154-271 argument. I was going to claim one of the 639 patent and the analyzing step. In particular, I thought maybe where you were going with this, and I might be jumping ahead and I might be way off base, but I thought where you were going with this was to say, to the extent that anybody's saying that all these steps were performed or some of them were performed before the patent issued, that's a misinterpretation of the claim language. No, I'm going just to the 271E1 issue at this point. The other two issues were raised in the district court. The district court made no ruling on those issues. So they're not actually before this court. We certainly can decide this case based on those other issues which were before the district court but not decided. So I think you should not assume that you can ignore them. That's why they're addressed in the brief. I did not assume that. But my understanding is that that would require the other side to cross-appeal those issues. Then they are addressed. This issue I'm making does not go to the other two issues. It's only the 271 issue. So we can understand what these claims are actually about. That's the basic confusion. In any sort of pharmaceutical, you have clinical activity. And that's protected and that's on the left-hand side of the chart. That's where you do the clinical studies. After that, activity is no longer protective. But it's the same activity that was engaged in the clinical studies and that was submitted to the FDA. It's the same information we're talking about, right? Same information which is not protected. It's not the same activity. So you're saying that this adverse event information, you can submit to the FDA and it's protected. But then when the FDA requires that you put that information on a label that it's not protected. Correct. Because it's also not... The step of labeling has been confused to be seeking labeling. It's not. It's simply identification of information that's required to be labeled. It's not seeking a label. Again, it's not activity at the FDA. It's activity at the patent office, that commercial activity. It's very analogous to any other patent in the pharmaceutical industry. So it can... I'm going to try again this time on this argument, see if I understand where you're going. So are you saying that under 271E, the act of submitting the label to the FDA for approval might fall under the safe harbor, but the completely separate and unrelated acts of slapping the label on a product and selling it is not anything done related to submission before the federal... Correct. ...or federal government. Correct. Well, what happens if you don't put the information on the label? Does the FDA then have the authority to revoke the approval of the ANDA? Certainly. But that's the same thing that happened. Let's look at a different patent. We all agree it has nothing to do with 271. How about a patent on the compound itself? Or a patent on the method of treatment? The compound is derived from clinical studies. But why isn't that like momenta? If putting the information on the label is something that's required to continue your approval, why isn't that like momenta, that the information that's being submitted is necessary to continue the approval? Because formulating exactly the same as you formulated for clinical approval and FDA approval is required to sell your drug, but your drug can still infringe a compound or formula patent. I'm not sure that that's responsive to my question. In momenta, we found that the creation of information which wasn't even physically submitted to the FDA, but that was necessary to maintain the approval, was information, the use of which, the generation of which was protected by 271E. So why isn't this the same thing here? That the information that you originally submitted to the FDA about adverse events has to be put on the label to continue your FDA approval. And so it too is protected by 271E. The answer is in your question, Your Honor. In momenta, it's the generation of the information that may or may not be resubmitted that they can't do. It's not the information, okay? 271E is the use of a patent. In momenta, they had to do the test again. It wasn't the information from the test that was patented. It was the act of the test, physically mixing the chemicals and doing the test. In momenta, they did it once for approval. They did it again. They did that test again. No one's redoing the test every time they stick a label. They're just sticking a label. Sticking a label is not the activity, okay? It's not an activity that generates any information to the FDA. It's the activity that's required to maintain your approval. But it's not information that's correct. But it's not activity. That's correct. Sticking a label on a package is information that's required. It's an activity required to maintain approval. But it doesn't generate any information that you would send to the FDA. It's just the information. It's not generating any information. In momenta, they were regenerating information with every batch. So on your theory, then, the patent is infringed when the information is placed on the label? Correct. No, no, back up. This patent teaches to get a patent. This patent teaches to get patent number three, which is infringed when the label's on the package. The class and patents are infringed when you go through the steps of... All right, so which steps? Tell me again. I know you've got this long claim. Which steps infringe the class and patent? Okay, it's a long claim, but it's only got four steps, okay? After the clinical trials are done, you re-evaluate the information to see if any of the adverse events are what are called novel adverse events. That re-evaluation is done, what, by the FDA? No, done by the person who wants to practice the claims of the patent. Does that person have any choice as to what's put on the label? If these are adverse events? Yes, if... The FDA prescribes, does it not? What's required to go on the approved label? Absolutely, and that's part of the FDA approval process. Okay, so that's not part of Dr. Klassen's invention? Not part of the invention. Okay, so then what? Certain adverse events can't be part of the invention because they're old. It has to be a novel adverse event. In this case, they treat with food. What do you mean by a novel adverse event? Something that's observed in a clinical trial? It has a very specific definition, and it's gone through re-examination in the three patents that were the priority patents to this patent. This is a continuation of those patents. It means, and I will stand corrected if I get it wrong precisely, that it is a previously unknown adverse event. So it's observed... It's not observed by this inventor, by Dr. Klassen, but something that's observed in the clinical trial and submitted to the FDA? It may have been observed or may not have been observed in the clinical trial. But it was submitted to the FDA. But it was submitted to the FDA. And it's on the label now. Submitted to the FDA, and one of the requirements, one of the steps is it has to be the kind of adverse event that requires labeling. Okay, so now we have it on the label. That's still part of the standard approval process. Right, and that's on the left-hand side. Where do we get to Dr. Klassen's invention? Okay, when he looks at a list, let's say there's 10 adverse events that were found in the clinical trial and submitted to the FDA, the FDA says put eight of those on there. Now he submits them? The inventor? No. This inventor submits them? After that process has occurred, the inventor then looks at that list and says, number four is a new novel adverse event that I can claim a patent on. Even though someone observed it in a clinical trial? It's not his discovery, right? It's just he says, I didn't know this before. Well, actually, the observer in the clinical trial is the named inventor. The company would look and say, there's a new one. They would take the clinical observer and make them the inventor, because they're the ones that found this. And that's what happened with the Silenor patent. They found this new adverse event and they named two people, I believe, at defendant as the inventors, okay? And they went and did the next step of the patent, Klassen patent, which is first step is find a novel adverse event, figure out who the inventors are. Next, obtain patent protection on that. So they went and filed a patent, which they got, the 307 patent, I believe. And then they looked to see, they identified that that adverse event was required. When you say obtain patent protection, you mean the adverse event is turned into a useful characteristic, which is becoming the subject of an invention? Correct. The subject of invention, sort of a method. Not Dr. Klassen's invention, but the person who observed the adverse event? Correct. Person who observed the adverse event can take that adverse event and turn it into a method of treatment or a method of non-treatment, if you will. So that becomes an FDA label in order to be commercialized? Correct. But it's already on the FDA label because we don't, none of the steps of the patent say go to the FDA and get this on the label. It has to already be on the label. It has to already be required to be on the label. That's part of the identification process. And then subsequent claims say selling a product by process. The product by process. What you're trying to do is to get a patent on people putting things onto a label, which the FDA requires. No, it's a patent on identifying which of those things are novel and entitled to patentability. It's not just anything that goes on the label. This is the argument in the three re-examples. It only covers things that are put on the label as required by the FDA. Correct. If you identify an adverse event that's not required to be on the label, let's assume the adverse event is... How could that be patented? Well, and again, that's not what we're here for. There was three previous patents and there's six or seven patents in this family. The first three patents went through a six-year re-examination. Two of them survived. One of them did not. And these are two subsequent patents in that family. The case was filed with that. There's complications. It's patentable in the same way as a method of treatment is patentable. Because when you identify a new adverse event that requires that you warn people, don't take this within three hours of food, that is akin to a method of treatment. Okay? Just as if I said, take it three times a day instead of twice a day. That's a different method of treatment and you're entitled to a patent. If I say take it within three hours of food, not within one hour of food, that's a method of treatment and you can get a patent on that. And so the identification of that which is novel... Although the FDA is required that you say that that's how it should be administered. Correct. But the FDA requires that you say, take this three times a day. The FDA requires that you use a particular formula. Everything in pharmaceuticals is required by the FDA. And that's the problem with extending 271E outside of the area, and I think Memento is in the area. If you extend it outside that area, then what is it that a pharmaceutical company can do that is not likely to result in information they have to tell the FDA about? I know we're running out of time. I just wanted to ask you one other question. Do you agree that with respect to the alleged impringement here, some of the steps took place before the issuance of the patent, right? And that you're using 154 to say that there's nonetheless infringement as a result of that. Yes, the step of applying for the patent, obviously in some of the claims, the step for applying for the patent obviously occurred prior to the issuance of these patents, but after the publication of these patents. There is no case law that says that those are discontinuous rights. There's no case law that says they're continuous rights, but there's no case law that says that 154 and 271 are discontinuous rights. To do so would create a loophole. If you see a publication, you go ahead and crank up your factory, you do the first five steps, wait until the patent issues, and now you can do anything you want to with the other steps and infringe the patent at will, wouldn't make sense. And the statute doesn't say you can, it does not say you can't. It's a new area of law. And as far as the other issues, whether or not the claims are the same, the only factual submission on that issue... We have to wrap it up, if you could be very brief. Very, very brief. The only factual submission on the issue as to whether or not the claims are the same or different is found at A493, which is the declaration of our expert. And in the context of a summary judgment, you have to assume that our facts are correct. There isn't even any refuting declaration from anybody that says the claims are different. So that issue really can't be, on summary judgment, held against us or here. So that's the other two issues. I just wanted to mention that. Okay, so now let's hear from the other side and we'll see if we need any rebuttal. Ms. Pirazzolo, how do you pronounce your name? It's Pirazzolo. Thank you. That's good. Please proceed. May it please the court, I represent Cimaxone with my colleague, David Manspizer. On Cimaxone's motion to dismiss, the district court properly presumed the allegations in the complaint to be true and reviewed the alleged infringing conduct against the safe harbor to see whether it fell within the scope of the safe harbor. On that basis, the district court properly held that the complaint failed to state a claim. The district court's decision was correct because the infringement allegations in this case go to conduct that lies at the very heart of the safe harbor. In particular, the complaint accuses Cimaxone of engaging in infringing conduct, including conducting a drug interaction study on Silanor, discovering that efficacy of Silanor could be affected by the timing of consumption of food, identifying the food effects as an adverse event that had to be reported in a package insert for Silanor. Indeed, there appears to be no dispute that this sort of activity, the conduct of clinical trials and the identification of adverse events for the FDA clearly falls within the safe harbor. It is what pharmaceutical companies must do in order to obtain regulatory approval of clinical trials. Producing a product and submitting it to the FDA saying, you know, here's my product, testing, submitting it to the FDA, that production would fall within the safe harbor, right? Because you're submitting it to the FDA, whether it's pursuant to an ANDA or otherwise, you're submitting it to the FDA, right? Well, here, yes, here when... I'm just, I'm not talking the facts of this case. I'm just hypothetically. Yes. So then suppose that you produce a product because you have to submit it to the FDA and you simultaneously produce 10 separate versions of the same formula. Don't submit those to the FDA, sell those. Is that protected by 271E? No, I think if you have the type of claim where you could be performing the claim for purposes within 271E1 or you could be performing for commercial reasons, there's going to be some instances where you're outside the scope of the safe harbor and some instances where you're in. So in your hypothetical, you would be outside the scope if you're producing the product. Even though in order to later sell the product, the FDA would require you to use that same formula, those separate sales, the separate creation and sale of those other drugs, the individual pills, the separate ones are not under 271E, right? Even though ultimately pursuant to federal law, you'd have to sit, sell it with that formula. Yes, that would be the more traditional case. And I think the reason this case is different is the accused conduct here and the patent claims that issue are not to a method of making a pharmaceutical product or a method of using a pharmaceutical product. They're to a method of collecting, analyzing information, submitting it to the FDA, identifying adverse events, and then commercializing. So for example, and in this respect, an error we think that the plaintiff is engaging here is not acknowledging the full scope of the claim method here. Suppose that he's accusing you, and I'm not honestly completely sure what he's accusing you of exactly, but suppose he's accusing you of the following. Suppose his claim actually covers this. And again, not sure his claim does cover this. I'm not trying to say anything. I'm just trying to figure out 271E. So suppose that his claim actually explicitly covers putting a label on a drug with information and selling it. Now, you have to produce and give labeling information to the FDA. So when you give them the drug and the labeling information, it's clearly got to fall under 271E because it says, for development and submission of information under a federal law. But when you commit separate acts of slapping the label on a drug and selling it totally unrelated to FDA approval, but required by the FDA, just like the formula is required to be used, with those separate acts that have nothing to do with seeking FDA approval, getting FDA approval, maintaining, you know, meaning submission and development, with those separate acts amount to 271E safe harbor protected activity. If I'm understanding the question correctly, and I don't think it's this case, because I don't think that's what the claims cover. Yeah, I understand. No, that, what I'm describing, wouldn't fall under the safe harbor. We're not contending, at least for this case, we're not contending that would fall within the scope of the safe harbor. Our point here is, is it not true that the labeling is required for continued FDA approval?  And the method here goes to the creation of the label. But one of the problems I'm having is, how can it be that 271E covers the application for this additional patent that your client engaged in? I'm having, certainly, the FDA doesn't require you to apply for a patent. I mean, why should that be covered by 271E? And I think it's covered because of the invention that issue here, and what the use of the patented invention is. So the claims are not just, you did things, you identified adverse information, and then you reused it to file a patent application. That is not what these claims say. The claims say access and adverse events, they're all method claims, both patents, three independent claims. Access an adverse event data source. Analyze the adverse event data to identify an essential adverse event regulated by a regulatory agency. Create an adverse event database. And then the last step is commercialization. So the method includes, as part of it, regulatory activity. And that means that the use of these patented inventions is necessarily related to regulatory activity. So the claims are not to... Those elements might be, but I think Judge Steich's point was, if we were to construe the claim, as absurd as it sounds, as covering the act of somebody else pursuing a patent. If we were to construe it that way, that act is not covered under 271E, even arguably, pursuing the patent. And well, I mean, I guess maybe you are arguing it is. So I don't mean to... Anyway, the difficulty is not that you don't get 271E safe harbor because some of the steps might fall in it, right? Your act has to fall in it. Well, I think that the safe harbor statute refers to use of the patented invention. And even plaintiff appears to concede when you're looking at the patented invention, you need to take into account all the steps of the patented invention. The patented invention here isn't just applying for a patent. The patented invention includes a number of steps and all of that was accused of, identified as being infringing conduct in the complaint. Wait a minute, but you realize that somebody that performs one step of a multi-step method is not using the patented invention, correct? Correct. You can't be sued for infringement. You're just doing one of five steps. Correct. So when the Patent Act uses the word patented invention, doesn't it necessarily require all the steps of a process to be performed in order for that to qualify as the patented invention? Yes, and that's exactly our point, actually. I thought that one went against you. No, it really doesn't because if you look at the claims and the accused conduct, to perform all the steps here, the steps include regulatory activity. So it necessarily relates to regulatory activity. So if you perform all... But that's not what 271E says. It doesn't say you're protected if it relates to regulatory activity in any way. It says it's use of the patented invention. It's solely for the... I don't have the exact language, but... The use is reasonably related to the development and submission of information under a federal law. Yeah, and here the claims actually refer to the collection of adverse event information that is required to be submitted to FDA. That is right within the claim. Okay, suppose I write a claim that says collection of adverse information data, which no doubt everybody would agree that element is related to submissions to the FDA. And then the rest of my claim is about using that adverse information data to do something completely different, right? Using the adverse information data to create a book whereby all information on all adverse events would be centralized for all products or something. I guess the point is, suppose the claim makes a huge departure. One element of it, one step, is something that could arguably say be said to fall within the safe harbor, but nobody could argue that not even the heart of the invention is related to safe harbor protected activity, and certainly almost none of the elements are. Is somebody then nonetheless protected under the safe harbor when they perform all of those steps and otherwise infringe a claim that's written like that? I realize my claim is confusing. Yeah, and I don't think we'd go so far. I think our argument is related to these particular claims that are not kind of primarily focused on other activity and not primarily focused on collection and analysis of adverse event data to be submitted to FDA. Here, if you look at the 639 patent, it includes four steps. And I think Classen in his brief concedes that three of the four steps are related to regulatory activity. Are we going to adopt a 75% rule of thumb? I mean, what are we going to do here? I feel like it's an all or nothing, to be honest with you. I'm having trouble with the majority or percentage of steps in the claim would amount to performing a patented invention which falls in the safe harbor. Well, we think it's all related because the focus of the claim is collection and analysis of adverse event data required to be- We think it's all related, but if he were correct that filing a patent application was what satisfied one of the elements, that act is not protected under the safe harbor. So you would have a method claim whereby four of or three of the steps are performing acts under the safe harbor, but one of them is clearly not. Why would that get you under the safe harbor? Because our position on this patent that has so much of the claim addressed to regulatory activity would be it is still reasonably related to submission of information to the FDA. Filing a patent application is reasonably related? That one step, no, but the performance of the entire method, yes. I mean, he could have drafted claims that didn't cover regulatory activity, but here, to your point, the accusation goes against all the steps of the claim method. And so all of the acts that we did, including conducting food, clinical studies, collecting that data, submitting it to the FDA. The difficulty is, I feel like based on your argument, we're back to where I started, which is your argument seems to be, if any step of the method, standing alone, if it stood alone, would have been protected under 271E, then a claim, no matter how many other steps, it has automatically justified. That's really not our argument because that's not this case. We're not taking it that far. But this case, the essential element of the claim that got added in, and that goes to our... Essential element. That's like heart of the invention, just to the invention. I mean, that's all been rejected every time that language appears. So do you think 271E protects any infringing act that goes to the heart of an invention? Are you a peripheral claimer or... No, but if you look at commercialization in claim one here, we don't think the commercialization is just to filing a patent or the commercialization activity includes labeling an activity that's essential to regulated activity. Can I ask you, before we run out of time, to address briefly the 154 issue? Yes. First, with regard to the infringement claim under 271, we believe the holding in the Monsanto case precludes infringement under Section 271 because it is... The studies that were conducted and the performance of the method steps did incur before the class and patents issued, including the filing of the patent application. And so all the steps were not performed before the patent issued. And Monsanto says infringement of a multi-step method claim cannot lie by the performance of a single step after the issuance of the patent when the initial steps were performed prior to issuance. It's 271G, right? Well, Monsanto dealt with 271G as well on the product by process claims. And here there are tremendous differences between the published and issued claims. We've set them forth in our brief, but with regard to the 069 patent, all of the claims that were in the published application were canceled in November 2006. So the predecessor to Claim 1 of the 069 patent wasn't even added until four years after the patent application published. And even that claim was substantially amended during prosecution. The examiner rejected those claims over the prior art and the language regulated by a regulatory agency requiring disclosure of the event and a package insert was added in February 2011. That's almost nine years after the patent application published. And with regard to the 639 patent, when it published in August 2006, did not have any method claims at all. And those are the sole claims in the now issued patent. In December 2008, Claassen canceled all those claims and then added the claims that are more related to the ones that issued. And even those new claims didn't have the limitation regulated by a regulatory agency requiring disclosure of the event and a package insert. So that was added later. Did that answer the court's question? Any more questions? No. Any more questions? No. Thank you, Mr. Girozzello. Mr. Zito, I think perhaps three minutes. I'm going to talk very fast though. Addressing the last issue first, there's no factual basis for those assertions. It's just attorney argument. The only fact in there is the declaration of our expert. I understand what you mean there's no factual basis. We know what the prosecution history is. Right. But the question is, the original claims had essential adverse event. The final claims had regulated by a regulatory authority added to, okay? In the patent, in the paragraphs of the patent, it says essential adverse event is one regulated by a regulatory authority. We have a declaration from a doctor who's an expert who said those are equivalent terms. It was simply to explain to the patent office what essential adverse event meant by saying that's one regulated by a regulatory authority. It was not a change. Yes, there's a change, but in order to get outside the scope, you have to have an essential or an important change. It can't be a minor change. The only evidence says that change is a minor change. So I just want to address that. We've already addressed it. It's in the brief. It's in the appendix. The other issue is even here today, in some of these examples, we talked about collection of adverse event information, submission of adverse event information, some of the questions that Judge Moore said. Those words don't appear in the claims. You have to look at the claims. The claims, and I'm looking again at claim one of the 069, I'm not going to read the whole claim, 0639, says assessing an adverse event database, analyzing adverse event data. It doesn't say creating, generating, submitting. It doesn't say collecting adverse event. Those are clinical activities. This patent talks about patenting activities, and there is no submission in this patent to the FDA, as was stated by opposing counsel. The submission is to the PTO, which is not an agency that regulates drugs or anything else. So the activity of this patent, although it is connected to clinical activity, it isn't the clinical activity. It's a post looking at the clinical activity. Clinical activity is done where the submission, the collection, the submission to the FDA, that happens. Then someone else in the patent department analyzes that data, looks for patentability amongst that data, identifies, and some of these claims say identify the inventors, and then take it and file a patent on it. Knowing that the FDA has already required this label, we are now getting a patent on the requirements of that label in the context of a method of use. This is a patent about patenting, not a patent about making pharmaceuticals, not a patent about clinical trials. And that keeps getting confused, even in the questions and the hypotheticals. There isn't a submission to the FDA. There isn't a collection. And that's what has to really be looked at here as far as whether 271E1 applies. And it doesn't, because it's not that kind of activity. I have 11 seconds for any questions. Thank you, Mr. Cito. Thank you both. The case is taken and the submission.